The People of the State of New York ex rel. Joseph Ross, Respondent, against Joseph H. Wilson, as Warden of Great Meadow Prison, Appellant.

Argued May 19, 1937; decided July 13, 1937.

*John J. Bennett, Jr.,* Attorney-General (*Bernard L. Alderman, Henry Epstein* and *Patrick H. Clune* of counsel), for appellant. The conditions imposed in granting the commutation gave the Parole Board the power to declare relator delinquent for violation of parole. (*People ex rel. Brackett* v. *Kaiser,* 209 App. Div. 722; *People ex rel. Presser* v. *Lawes,* 221 App. Div. 692; *People ex rel. Atkins* v. *Jennings,* 248 N. Y. 46; *People ex rel. Mongno* v. *Lawes,* 225 App. Div. 193; *People ex rel. Cecere* v. *Jennings,* 250 N. Y. 239.) In any event relator's commutation and parole are governed by article 8 of the Prison Law (Cons. Laws, ch. 43) as it existed prior to 1928. The article 8 enacted in 1928 does not affect relator. (*People ex rel. Cecere* v. *Jennings,* 250 N. Y. 239.) The amendment in 1921 of section 243 of the Prison Law was not *ex post facto* as to the relator. (*People ex rel. Ross* v. *Lawes,* 242 App. Div. 638; *People ex rel. Sabatino* v. *Lawes,* 217 App. Div. 779; *People ex rel. Schlechter* v. *Jennings,* 130 Misc. Rep. 748; 223 App. Div. 814; *People ex rel. Cecere* v. *Jennings,* 250 N. Y. 239.)

*Harry Kalman* for respondent.

CRANE, Ch. J. Section 218 of the Prison Law (now Correction Law, Cons. Laws, ch. 43), as amended by chapter 286 of the Laws of 1912, reads as follows: " Absolute discharge of paroled prisoner. If it shall appear to said board of parole that there is reasonable probability that any prisoner so on parole will live and remain at liberty without violating the law, and that his absolute discharge from imprisonment is not incompatible with the welfare of society, then said board shall issue to said

prisoner an absolute discharge from imprisonment upon such sentence, which shall be effective therefor."

Note must be made that this refers to an *absolute final* discharge, not a release on parole for good behavior.

On June 5, 1931, the Governor commuted the prison term of Joseph Ross who on February 11, 1921, had been sentenced to a determinate term of twenty years for grand larceny first degree, second offense. The certificate of his release is in the record and recites that the commuted term expires June 5, 1931, and annexed to it is the acceptance of the prisoner, wherein he states: " This parole is granted under the conditions as set forth in the commutation granted by the Governor, which provides that I shall live and remain at liberty *without* violating the law, and be subject to the jurisdiction and control of the Board of Parole, as provided in article eight of the Correction Law, and also under the further condition that if I shall, during the period between the date of my release on parole and the date of the expiration of the full term for which I was sentenced, be convicted of any felony committed in the interval, as aforesaid, I shall, in addition to the sentence which may be imposed for such felony, be compelled to serve in a state prison or penitentiary, the remainder of the term without commutation, which I would have been compelled to serve but for the reduction of my sentence."

The commutation issued from the Executive Chamber, signed by Governor Roosevelt, read: " I do hereby reduce the sentence of each of the said convicts as recommended by said Board, under the conditions * * * he does not offend against the Laws of the State * * * and under the further condition that such convict shall live and remain at liberty without violating the law, and be subject to the jurisdiction and control of the Board of Parole for State Prisons as provided in article eight of the Prison Law, *excepting section Two Hundred and Eighteen thereof*, and also under the further condition that

if any convict whose sentence is so reduced shall, during the period between the date of his release by reason of such reduction and the date of the expiration of the full term for which he was sentenced, be convicted of any felony committed in the interval, aforesaid, *he shall*, in addition to the sentence which may be imposed for such felony and before beginning the service of such sentence, be compelled to serve in the prison or penitentiary in which he may be confined for the felony for which he is so convicted the remainder of the term without commutation, which he would have been compelled to serve but for the reduction of his sentence * * *."

The prisoner seeks to nullify all the conditions of the Governor's pardon except that which sends him back to serve the remainder of his sentence, if he commits a felony after he is released. He may offend the laws of the State, commit a misdemeanor or any number of them without having broken his promised conditions or, if he does thus break the law, the condition means nothing — no authority can bring him back to serve out his sentence. Likewise when the Governor showed mercy on condition that the prisoner should " be subject to the jurisdiction and control of the Board of Parole for State Prisons as provided in article eight " this likewise was ineffectual to give the Board any control over him whatever. The deliberate act of the Chief Executive stating so specifically the terms of his pardon should not be treated as a nullity.

Ross was released June 5, 1931, after serving ten years, three months and twenty days. Within two months he was back again, having been convicted of the crime " of impairing the morals of a minor." On August 29, 1931, he was returned to prison for violating his parole. On August 21, 1933, he was again paroled and again apprehended October 2, 1933. Paroled again on October 3, 1934, he was returned to prison on January 22, 1935, and released on habeas corpus by the Appellate Division, the court dividing three to two.

As the prisoner had broken the terms and conditions of his commutation by subsequently committing a crime, he was rightly rearrested and imprisoned. For the commission of a felony the prisoner *had* to serve out the balance of his term: for the breaking of the law — a misdemeanor, he was again subject to the Board of Parole and might be again paroled, as was done in this case. For this reason if no other he should not have been discharged.

When the Governor said " subject to the jurisdiction and control of the Board of Parole for State Prisons as provided in article eight of the Prison Law excepting section Two Hundred and Eighteen," we would have no doubt as to his meaning had this section read as above quoted and as it was before the amendment in 1928. The commuted prisoner, subject to the Board of Parole, could not be finally and absolutely discharged; he might be paroled but not discharged as provided in section 218.

In 1928 article eight of the Prison Law was revised and section 218 became the following:

" § 218. Board of parole to act on violations of parole. Whenever there is reasonable cause to believe that a prisoner who has been paroled has violated his parole, the board of parole at its next meeting shall declare such prisoner to be delinquent and time owed shall date from such delinquency. The warden of each prison shall promptly notify the board of parole of the return of a paroled prisoner charged with violation of his parole. Thereupon, such board of parole shall, as soon as practicable, hold a parole court at such prison and consider the case of such parole violator, who shall be given an opportunity to appear personally, but not through counsel or others, before such board of parole and explain the charges made against him. The board of parole shall within a reasonable time act upon such charges, and may, if it sees fit, require such prisoner to serve out in prison the balance of the maximum term for which he was originally sentenced calculated from the date of

delinquency or such part thereof as it may determine, or impose such punishment as it deems proper, subject to the provisions of the next section."

Notice that this gives the Board a *discretion* in requiring the prisoner to serve the maximum sentence: the Governor's commutation says that if a *felony* be committed the prisoner *shall* serve the remainder of his term.

As above stated, the Parole Board exercised its discretion in this case and paroled Ross two or three times as he had only been convicted of a misdemeanor.

Article nine apparently was not amended to meet the changes in article eight, section 218, because section 242 retained or continued the phrase " excepting section two hundred and eighteen thereof," having reference to that section as it was prior to 1928.

Section 243 of the Prison Law, as amended by chapter 567 of the Laws of 1921, read as follows: " The governor shall, in reducing the sentences of convicts not subject to the jurisdiction of the board of parole, annex a condition that such convict shall live and remain at liberty without violating the law, and be subject to the jurisdiction and control of the board of parole for state prisons as provided in article eight hereof, *excepting section two hundred and eighteen* thereof, \* \* \*."

Note that this had reference to definite sentences such as that given Ross.

Chapter 567 of the Laws of 1921 amended section 242 of the Prison Law so as to read: " Any such warrant for the release of other convicts shall be transmitted to the officer to whom it is directed, who shall thereupon proceed to execute such warrant by releasing the convicts mentioned therein on the date fixed for their release. Such convicts shall thereupon be allowed to go on parole outside of said prison walls and inclosure upon such terms and conditions as the board of parole for state prisons shall prescribe, but to remain while so on parole in the legal custody and under the control of the agent and warden of the state prison from which he is so released

until the expiration of the term of his sentence subject to the provisions of article eight hereof, excepting section two hundred and eighteen thereof."

The section 218 referred to in both sections 242 and 243 is that section as it was prior to 1928 and which permitted the Board of Parole to discharge prisoners absolutely, not parole them.

The amendments of sections 242 and 243 in 1921 resulted in placing definite-sentenced prisoners under the jurisdiction and control of the Parole Board. Prior to that date the Board had no jurisdiction over them. (*People ex rel. Mongno* v. *Lawes*, 225 App. Div. 193.)

The Governor in commuting Ross used the language of these sections 242 and 243 and must have intended that section 218 (excepted) should have the meaning which it had when these sections were amended in 1921.

We need not strain, however, to explain these inconsistencies, as the Governor's act must be given a fair and reasonable construction. To say that in one phrase he gave Ross into the " jurisdiction and control of the Board of Parole " and in the next phrase by excepting section 218 (as it now is) took it away, and all in one sentence, lacks sense. The exception means that the Board of Parole cannot grant Ross absolute discharge as it could have done prior to 1928.

The Attorney-General of the State in an opinion (Op. 1935, pp. 127, 128) took this view of the law, saying: " Notwithstanding the fact that section 218 was repealed as of July 1, 1928, section 243 remained as above outlined until April 16, 1931, when the reference to section 218 was omitted."

The order of the Appellate Division should be reversed and that of the County Court dismissing the writ affirmed and the relator remanded to custody.

RIPPEY, J. (dissenting). A writ of habeas corpus directed to the warden of Great Meadow Prison to inquire into the cause of the detention of relator was

dismissed by the County Judge of Washington county on June 12, 1936. Upon appeal, the Appellate Division, third department, reversed upon both the law and the facts, sustained the writ and discharged the relator. The Attorney-General has appealed to this court.

We have before us the petition, writ, return and traverse and nothing else. No evidence was taken on the return of the writ. If there was a dispute as to matters of fact concerning which inquiry might be made in this proceeding, it was the duty of the judge before whom the writ was returned to take such evidence. (*Matter of Lee*, 220 N. Y. 532.) It must be assumed that there was no dispute as to the facts. Relying upon the record before us, the decision of the Appellate Division must be sustained.

In the petition, relator asserts that he " is now illegally held without due process of law, in flagrant violation of his constitutional rights, and contrary to law, in custody, imprisoned and deprived of his liberty without his consent " by the warden of Great Meadow Prison; that the sole authority claimed by virtue of which he is detained, imprisoned and deprived of his liberty by the warden is the commitment issued by the County Judge of Bronx county on February 11, 1921, for a definite term of twenty years and that " said commitment is null and void in continuing petitioner in prison " because his term expired and he was duly discharged on June 5, 1931, after a total confinement of ten years and five months, allowing for credit for commutation and compensation pursuant to article 9 of the Prison Law; that he was conditionally discharged by the Governor on June 5, 1931, and has not violated any condition of his discharge nor is he held because of any such claimed violation. He alleges that he has been returned to prison by virtue of some order of the Parole Board for the alleged violation of a rule of the Parole Board relating to the despatch of New Year's greetings to his family. Attached to the petition are copies of the commitment of February 11,

1921, and of the certificate of release dated May 26, 1931, and of the agreement of relator on release dated June 4, 1931.

The only parts of the return which purport to show the cause of relator's detention are paragraphs II and III. From those clauses it appears that the warden is holding relator under the commitment of February 11, 1921, on a declaration by the Parole Board of delinquency on August 21, 1933. This the relator admits, and there were no facts to traverse, but, by a traverse, relator reasserts his reasons why he is illegally detained. The record contains a copy of the compensation sheet and the commutation of sentence by the Governor.

It appears that on February 11, 1921, the relator was sentenced to a term of twenty years imprisonment after conviction of grand larceny in the first degree as a second offender. The relator was not subject to the jurisdiction of the Board of Parole, as he was sentenced as a second offender for a definite term. On January 19, 1931, as required by the provisions of section 233 of the Correction Law, the officers of Great Meadow Prison, where relator was then confined, constituting the board provided by section 236 for the purpose of determining the amount of commutation and compensation to which relator was entitled under said law, reported to the Governor that relator was entitled to a reduction of forty-six days in jail before sentence and had earned a reduction of nine years, six months and twenty-three days, and such reduction would fix the date for discharge as June 5, 1931. Thereupon, on March 30, 1931, in pursuance of the power conferred by article IV, section 5, of the State Constitution, the Governor conditionally commuted his sentence to expire June 5, 1931. The commutation was in the following words:

" Now, therefore, in pursuance of the provisions of the Prison Law, I do hereby reduce the sentence of each of the said convicts as recommended by said Board, under

the conditions that prior to his release from imprisonment by virtue of this reduction of sentence, he does not offend against the Laws of the State or the rules of the prison, and under the further condition that such convict shall live and remain at liberty without violating the law, and be subject to the jurisdiction and control of the Board of Parole for State Prisons as provided in Article Eight of the Prison Law, excepting section Two Hundred and Eighteen thereof, and also under the further condition that if any convict whose sentence is so reduced shall, during the period between the date of his release by reason of such reduction and the date of the expiration of the full term for which he was sentenced, be convicted of any felony committed in the interval, as aforesaid, he shall, in addition to the sentence which may be imposed for such felony and before beginning the service of such sentence, be compelled to serve in the prison or penitentiary in which he may be confined for the felony for which he is so convicted the remainder of the term without commutation, which he would have been compelled to serve but for the reduction of his sentence, but, he may, however, earn compensation in reduction of the remainder of such term, and provided further that he willingly and efficiently performs the duties assigned to him prior to his discharge."

There were three specific conditions fixed by the Governor upon which commutation of sentence was granted: (1) That prior to his release from prison the relator shall not offend against the laws of the State and the rules of the prison. (2) That he shall live and remain at liberty without violating the law, and be subject to the jurisdiction and control of the Parole Board, as provided in article 8 of the Prison Law, excepting section 218 thereof. (3) That in the event he shall be convicted of a felony prior to the expiration of his unexpired maximum term, he shall be required first to serve the unexpired portion of that term without commutation. The return of the warden states that the

relator was released on June 5, 1931. By the express terms of the Governor's commutation, he reduced the sentence so that it would conditionally expire on that date. The return necessarily shows that there was no violation by relator of the condition of release first above mentioned. Inasmuch as the relator was sentenced for a definite period, no action by the Board of Parole was required prior to his release. The situation would have been different had relator been sentenced to an indefinite term and had it been reduced merely to the minimum. (Correction Law, § 223; *People ex rel. Cecere* v. *Jennings,* 250 N. Y. 239.) Article 8 of the present Correction Law applies only to prisoners sentenced to an indeterminate period subsequent to July 1, 1928 (§ 223) and the relator is thus specifically excluded from the provisions of that article. (*People ex rel. Cecere* v. *Jennings,* 250 N. Y. 239, 241.)

The functions of the Board of Parole for State Prisons, together with all the jurisdiction, powers and duties pertaining to such functions as of January 1, 1927, were transferred to the Department of Correction to be exercised and performed therein by or through the appropriate board. (State Departments Law, § 401 [Cons. Laws, ch. 78]; Laws of 1926, ch. 606.) Out of subsequent legislative enactments (one of which repealed § 401 above) emerged the Parole Board in authority at the time of relator's release. (See Laws of 1928, ch. 485, § 2; Laws of 1929, ch. 243, § 11; Laws of 1930, ch. 824, § 5.) So far as relator is concerned, the powers of this Board were expressly limited by the Governor as provided in the second above mentioned condition of commutation. The Governor could attach such conditions as he saw fit and commutation was not subject to legislative restrictions, limitations or extensions. (*People ex rel. Atkins* v. *Jennings,* 248 N. Y. 46.) Notwithstanding, the Board proceeded to attach terms and conditions to the release not imposed by the Governor. Among them was the condition in effect that he should

be subject to the same broad jurisdiction and control by the Board as that exercised over prisoners sentenced to indeterminate sentences. They also extended their jurisdiction to the limits permitted by article 8 of the Correction Law, in spite of the fact that that article of the Correction Law could have no application to this relator. The extent of the jurisdiction was that of supervision within the limitation imposed by the Governor and did not extend to rules and regulations enacted to govern parolees to whom the Board itself was authorized by law to grant parole. The fact that relator agreed to the conditions imposed by the Parole Board does not change the situation, for he could not be compelled to agree to forego a right which was given him by law or contract himself into servitude. The result is that the Board had no jurisdiction to parole and reparole as was done in this case or to return the relator to prison for violation of any rules, regulations or conditions imposed by it and not included within the express conditions of release imposed by the Governor. The provisions of section 218 of the Prison Law before amendment in 1928 (Laws of 1928, ch. 485) extends the jurisdiction of the Parole Board to grant an absolute discharge in a case under their control on conditions therein stated. The purpose of the Governor in excepting section 218 as then in force was to limit the Board's jurisdiction and control over this relator.

Section 696 of the Code of Criminal Procedure provides for the effect of violation of the conditions imposed by the Governor and also provides that determination of such violation shall be had in the manner prescribed in the Correction Law. The Governor placed control of relator in the hands of the Board of Parole as provided in article 8 (except as to section 218). The practice required for retaking in the event of violation of the conditions imposed by the Governor is laid down in sections 216–220 of article 8 of the Correction Law. The record is barren of any evidence that any determination

was made or practice followed as required by the provisions of those sections. It must be presumed that relator was reincarcerated by virtue of the declaration of delinquency made by the Parole Board on August 21, 1933. It is so stated in the return, but the proceedings before the Parole Board are not in the record and there is nothing to indicate what the delinquency was. There was nothing before the court upon which any conclusion could be based that a violation of the terms and conditions imposed had occurred. Thus, there was no evidence that the Parole Board had jurisdiction to order his reincarceration. No matter how broad a jurisdiction the Parole Board may have had, Ross could not be reincarcerated unless it was upon evidence of violation of conditions of parole or commutation. In *People ex rel. Atkins* v. *Jennings* (*supra*, at p. 53) it is said: " On a question so vitally affecting personal liberty, the record should establish that the right to remain outside prison walls had been forfeited. Nothing should be left to surmise or conjecture." Under section 1245 of the Civil Practice Act, the return must state the authority and true cause of the imprisonment or restraint, setting it forth at length, and this provision requires that the facts upon which the order of reincarceration was made should be set forth. (*People ex rel. Tweed* v. *Liscomb*, 60 N. Y. 559; *People ex rel. Trainor* v. *Baker*, 89 N. Y. 460; *People ex rel. Stumpf* v. *Craig*, 79 Misc. Rep. 98.) There is no evidence in the record that Ross has violated any law since June 5, 1931. The Parole Board could not act arbitrarily and was without jurisdiction to make a decision unfavorable to the relator requiring his reincarceration unless based upon facts showing violation of the conditions imposed. Action on undisclosed grounds may not avail, for those grounds, if any existed, might be no grounds at all. Retaking without a warrant and an opportunity to be heard is authorized by no law. Such arbitrary power is nowhere committed to that Board. The situation is in no wise changed by the statement of relator in the petition

that he was recommitted by the Parole Board three times for infractions of its rules. For that ground he could not be recommitted. The law provides that if he violated the conditions imposed by the Governor, the " commutation shall be void and he shall be remanded to the place of his former imprisonment and there confined for the unexpired term for which he had been sentenced." (Code Crim. Proc. § 696.)

Exhibit A, attached to the brief of the Attorney-General, certifying that on May 3, 1931, one Peter Criscuolo was convicted and given a suspended sentence and returned to Sing Sing Prison on August 28, 1931, has no place in the record on this appeal. This exhibit did not appear in the record upon which the case has been heard nor is there a scintilla of evidence in the record connecting the relator with the person mentioned in that exhibit.

The order of the Appellate Division should be affirmed.

LEHMAN, O'BRIEN, HUBBS, LOUGHRAN and FINCH, JJ., concur with CRANE, Ch. J.; RIPPEY, J., dissents in opinion.

Ordered accordingly.