THE PEOPLE OF THE STATE OF NEW YORK ex rel. GUY J. DEPEW, Relator, against NEW YORK STATE BOARD OF PAROLE, Consisting of FREDERICK A. MORAN, Chairman, et al., Defendant.

Supreme Court, Special Term, Broome County, July 30, 1946.

*Samuel Feldman* for relator.

*Nathaniel L. Goldstein, Attorney-General (William S. Elder, Jr.,* of counsel), for defendant.

DEYO, J. The relator was convicted of assault, second degree, in the Broome County Court on September 30, 1926, and received a sentence for a definite term of ten years. On May 19, 1933, he was. released and placed on parole. While still on parole, and on April 29, 1935, he was convicted of forgery, second degree, and again sentenced to a definite term of ten years. On being sent to Attica he was informed by the prison authorities that he owed two years, nine months and five days on the previous sentence, which he must first serve. On December 24, 1943, he was again released on parole. By this proceeding relator seeks an absolute discharge from the jurisdiction and restraint of the parole board.

The relator's position is primarily based upon the contention that time once earned and credited to a convict's record, either by way of commutation for good conduct or compensation for efficient and willing performance of assigned duties, cannot be forfeited by some subsequent act. Hence, the time which he had earned during his first sentence, amounting to one year, seven months and eighteen days of commutation and one year, eleven months and eighteen days of compensation, should not have been charged against him, and his second sentence should have been put into force and effect that much

earlier, thus accelerating the expiration date of his present maximum term from April 4, 1947, as claimed by the defendant, to sometime in 1943, or 1944. If he be right, then obviously, his maximum sentence has already expired and he should be released forthwith.

In this connection the relator attempts to draw a distinction between the Governor's constitutional powers to commute and pardon which admittedly are practically unlimited, and the right granted to a convict by the Legislature to earn a reduction in his sentence by his own efforts and good conduct. A diminution of sentence granted through executive clemency, it is argued, may be conditional, but a diminution in sentence, once earned and credited in accordance with the statute, becomes absolute and irrevocable. The difficulty with the relator's contention in this respect is that the laws in effect at the time of the relator's first conviction and first release provide otherwise, at least so far as commutation is concerned. The relator was sentenced to a definite term of ten years. He could be discharged from prison only by the expiration of that sentence, by a Governor's pardon under the Constitution, or by an order of the Governor pursuant to the provisions of the Prison Law then in effect. Such law, it is true, gave a convict the right to earn both commutation time and compensation time. (Prison Law, § 230.) Whether it should be granted or withheld, however, was a matter to be determined in the first instance by the Prison Board (Prison Law, § 236), which body was charged with the responsibility of recommending to the Governor the amount of compensation and commutation to be allowed. It then became the Governor's prerogative to decrease or increase the commutation recommended within the limits fixed by article 9 of the Prison Law (Prison Law, § 237), and finally, in his discretion, to allow or disallow the recommendation in whole or in part. (Prison Law, § 242.) It seems obvious, therefore, at least in the case of commutation, that although the relator had a statutory right to earn a diminution and to have such diminution presented to the Governor, whether or not it would be allowed and credited to him was, in the final analysis, a matter lying solely within the discretion of the Governor. Being a matter of discretion, it must naturally follow that the Governor could refuse it or allow it, either wholly or conditionally. In the instant case the Governor elected to reduce the sentence conditionally, which he had every right to do, whether section 243 of the Prison Law applied or not, and the condition having been broken, i.e., a subsequent

conviction having been had, the relator was properly compelled to forfeit at least his commutation time and serve out the balance of his term. (*People ex rel. Ross* v. *Wilson*, 275 N. Y. 169, 173; *People ex rel. Mongno* y. *Lawes*, 225 App. Div. 193.)

Even though the commutation time be forfeitable, still the relator argues that time earned by way of compensation stands on a different footing and cannot be taken from him. If he be correct in this, then his second sentence should have been put into force and effect one year, eleven months and eighteen days earlier, thus accelerating the expiration date of his maximum term to sometime in 1945, and hence, entitling him to be fully and completely discharged from custody.

The history and development of the law relative to compensation and commutation indicates that the Legislature, originally at least, contemplated two kinds of reduction in sentences, one to be granted for good conduct and known as commutation, and one to be granted for efficient and willing performance of assigned duties, known as compensation. Commutation has been a feature of our law since 1817. Compensation first appeared in 1916. Each had a definite purpose, each has a distinct usage, and each was computed upon a different basis. One of the reasons advanced for the introduction of the new term instead of a mere extension of commutation is that there was a desire on the part of the Legislature to compensate convicts for services rendered while in prison, without resorting to the medium of public funds. (1935 Report of N. Y. Law Revision Commission, p. 492 *et seq.*) If this were the purpose, it would seem that the Governor could no more take such time from the credit of a convict than he could take money from his pocket, once it had been earned. Later amendments either intentionally or through confusion in phraseology, blurred the distinction between the two terms, and eventually it was abolished entirely. (L. 1935, ch. 902.) However, the Prison Law in effect at the time of the first conviction, made a definite distinction between the two terms. (Prison Law, § 230.) Section 236 set up a board in each prison to determine both the amount of commutation and compensation to be recommended to the Governor. Such board was given full power to recommend the withholding of both as punishment for offenses against the discipline of the prison, but further provided that "*Compensation* credited to a convict in the first instance * * * *shall stand as compensation allowed,* unless withheld wholly or partly by the board as punishment * * *.*"* (Italics supplied.) It is interesting to note that although the Legislature

was most meticulous in its use of both terms throughout this section, *compensation* alone was referred to in the closing sentence above quoted. Section 237 gave to the Governor the right to decrease or increase the amount of *commutation* recommended, but says nothing about compensation. At the time of the relator's first release this section had been amended to give to the Governor similar discretion to increase or decrease compensation. (L. 1929, ch. 243.) However, if the argument be sound that the right to earn compensation in diminution of a term be a substantial vested right to stand as compensation allowed unless withheld by the board, then a law passed subsequently is ex post facto and nonoperative. (*Hartung* v. *People*, 22 N. Y. 95; *People ex rel. Adams* v. *Johnson*, 44 Misc. 550; *People ex rel. Schali* v. *Deyo*, 181 N. Y. 425.) Section 242 of the Prison Law provided in part that the Governor "upon the receipt of the report recommending the allowance of *diminution* of sentences of convicts as provided for in this article may, in his discretion, allow the same *  *  *  as to any or all of such convicts." (Italics supplied.) Neither the term commutation nor compensation is used in this section. It may, therefore, well be argued that since section 236 provided that compensation credited to a convict should stand unless withheld by the board, and section 237 granted to the Governor the right to increase or decrease commutation only, that the phrase " diminution  *  *  *  as provided for in this article " relates only to commutation and by exclusion, removes time earned by compensation from the consideration of the Governor.

Section 243 of the Prison Law in effect at the time of the first conviction, authorized the Governor, in reducing the sentence of convicts not subject to parole, to annex certain conditions relative to their conduct and subjecting them to the jurisdiction of the Board of Parole, and also provided that if such convict should be convicted of a felony he should, " in addition to the sentence which may be imposed  *  *  *  be compelled to serve *  *  *  the remainder of the term without commutation which he would have been compelled to serve but for the commutation *  *  *." At the time of the first release this section had become section 243 of the Correction Law, but the phraseology remained substantially the same. A plausible argument is presented that in view of the distinction between commutation and compensation appearing throughout article 9 of both the Prison Law and the Correction Law as then written, when the Legislature used the phrase " but for the commutation ", it did so advisedly and meant to take from the convict in the

event of a subsequent conviction, only the time credited by commutation and not the time credited by way of compensation. Moreover, if the distinction between commutation and compensation be real and if time earned by compensation be not forfeitable, then it would hardly seem plausible that the Governor, whether by executive clemency under the Constitution, or by virtue of the law as then written, could or would insist on a condition for granting parole that a convict subject himself to the possibility of being called upon to serve more than his maximum term less such compensation.

Regardless of how convincing the argument may be that there was a real distinction between commutation and compensation, as the terms were employed in the Prison Law in effect when the first conviction was had, and the contention that time earned and credited as compensation for efficient work was somewhat akin to a reduction in sentence, and could not be forfeited, the Appellate Division of this department has apparently held otherwise in *People ex rel. Fershing* v. *Wilson* (259 App. Div. 957). It may very well be, as the relator contends, that the reversal of the lower court (174 Misc. 191) was on a question of procedure rather than on the merits. However, that is not for me but for the Appellate Division to say. Until that answer is given I shall follow the decision and decline to hold that a distinction exists or that compensation time may not be forfeited.

I find no merit in the relator's contention that section 243 of the Prison Law (now Correction Law, § 242) is not applicable to him, and hence, he was not properly under the jurisdiction of the Parole Board at the time of the first release. Pursuant to both the section and the Governor's inherent right to impose conditions on commutations, he was brought within the terms of the section. The fact that except for such parole he would not have been within the class of convicts to which the article ordinarily applied (Correction Law, § 223) seems to me to be beside the point. In any event, the Governor, in commuting a sentence, had the right to impose any condition which was not illegal, immoral or forbidden (*People ex rel. Schlecter* v. *Jennings,* 130 Misc. 748, 750, affd. 223 App. Div. 814) and could utilize the Board of Parole as an agency for the purpose of enforcing the conditions of the commutation. (*People ex rel. Ross* v. *Lawes,* 227 App. Div. 464, 466.)

The relator's contention that he should have been unconditionally discharged and should not have been compelled to sign either of the parole agreements cannot be sustained. At the

time of the first release commutation time was awarded him in accordance with the law as then written, in consideration of and conditioned upon his submitting to the jurisdiction of the Parole Board. At the time of the second conviction and release, the law had been changed and any possible distinction between compensation and commutation time abolished.

The relator further argues that since the original judgment was for a definite term of ten years, imprisonment thereunder could not be extended beyond the original expiration date, which was February 23, 1936, and that upon his second conviction on April 29, 1935, he could not possibly have been charged with more than the ten months then remaining on his first sentence. He overlooks the fact that his sentence was commuted conditionally, and that one of the conditions was that if he should commit a felony before the final expiration date of his sentence, i.e., February 23, 1936, he would be compelled to serve " in a State Prison the remainder of the term   *  *  * which I would have been compelled to serve but for the reduction of my sentence  *  *  *."

Laying aside any discussion of a possible distinction between time earned by compensation and by commutation, two years, nine months and five days remained of the first term at the time of the first release. This constituted the " remainder " of that term and was the amount of time which the relator agreed to serve if again convicted, in consideration for his conditional release. This is not a case where a prisoner serving an indefinite sentence was paroled by the Parole Board, and although permitted to go outside the prison walls, still remained, in legal theory, in prison and serving his sentence. (*People ex rel. Newton* v. *Twombly,* 228 N. Y. 33; *Lehrman* v. *State of New York,* 176 Misc. 1022.) Here the relator was released on the conditional commutation of the Governor. By violating the terms of this conditional commutation he forfeited the time which he had earned. (*People ex rel. Mark* v. *Lawes,* 131 Misc. 426.)

There has been no violation of section 2188 of the Penal Law, which provides that " *   *  * imprisonment directed by the judgment shall not be suspended or interrupted after such imprisonment shall have commenced." This limitation is upon the power of the court and not upon the authority of the Governor. As was said in *Matter of Lyons* v. *Goldstein* (290 N. Y. 19, 24): " The last quoted portion of the section cannot be lifted out of its context and applied to cases and circumstances to which it obviously does not and cannot relate. The section

is limited in scope to the circumstances under which the *court* may or may not act as the Legislature has therein provided." (Italics supplied.) It follows, therefore, that *People ex rel. Paris* v. *Hunt* (201 App. Div. 573), cited by the relator, is not in point.

I agree with the defendant that section 2190 of the Penal Law is a complete answer to the relator's contention that the second judgment should have been put into force and effect immediately. The statute has removed cases coming within its purview such as the one at bar, from the presumption referred to in *People ex rel. Gerbino* v. *Ashworth* (267 App. Div. 579; see *People* v. *Ingber*, 248 N. Y. 302, 305.) Furthermore, one of the conditions of the Governor's commutation specifically authorized by section 243 of the Prison Law (now Correction Law, § 242), was to the effect that time forfeited for a subsequent conviction should be served " in addition to the sentence which may be imposed * * *, and before beginning the service of such sentence * * *."

The writ is dismissed and the relator is remanded to the custody and jurisdiction of the Board of Parole until the expiration of his maximum term.