(July 13, 1972)

■ In the Matter of NATTIN REALTY, INC., Appellant, v. JOSEPH E. LUDEWIG, as Building Inspector and Zoning Administrator of the Town of Wappinger, et al., Respondents.— In a proceeding pursuant to article 78 of

the CPLR *inter alia* to compel the respondent Building Inspector and Zoning Administrator to issue building permits and to invalidate certain amendments to the Zoning Ordinance of the Town of Wappinger, petitioner appeals from a judgment of the Supreme Court, Dutchess County, entered December 7, 1971, which denied the application. Judgment affirmed, with costs. No opinion. Shapiro, J. (dissenting). The petitioner, Nattin Realty, Inc. (Nattin), in this proceeding pursuant to article 78 of the CPLR, seeks to compel the respondent Building Inspector and Zoning Administrator of the Town of Wappinger to issue a building permit for the erection of the first 36 units of a 342-unit garden apartment project. The land in question has been zoned for garden apartments since 1963. The Town Planning Board approved Nattin's site plan and on February 4, 1970 issued a special construction permit. After a public hearing at which Nattin presented evidence, the Town Board on March 9, 1970 amended its zoning ordinance, rezoning the area in which Nattin's land was located from "optional dwelling" to one-family residential, thus ruling out use of the land by Nattin for garden apartments. On March 13, 1970 the Town Building Inspector-Zoning Administrator denied Nattin's application for the building permit for the first two 18-unit buildings, on the basis of the March 9 amendment and Nattin's failure to comply with a 1967 local law (Local Laws, 1967, No. 2 of Town of Wappinger) requiring "any person, owner or operator" to obtain the prior written consent of a majority of the Town Board before establishing, operating and maintaining any water supply and distribution system in the town. The 1967 local law, on its face, deals with water companies rather than with builders who undertake merely to include a water supply system for those who will occupy their project. The respondents contend that the March 9, 1970 amendment rezoning Nattin's property was adopted "for the safety and welfare of both present and future residents of" the town, alleging that the more than doubling of the town's population in the past 10 years and the rate of growth "has produced serious hazards for the residents * * * by reason of inadequate supply of water and infiltration of said supply by noxious and deleterious substances * * * into streams and ponds; by hazards caused by raw sewage running into streams, ditches and ponds; by the pollution of the streams, ponds, and underground water supplies". The respondents also contend that the rock formation in the area in which Nattin's land is located is such that it can be developed for use by a substantial number of people only "with a supply of water from a known source of substantial supply and by using the Hudson River as the terminal point for sewage disposal". At the hearing on this article 78 proceeding the evidence established that the only practical use of Nattin's land was for cluster-type garden apartments, since its use for one-family homes would require that each house be on a four- or five-acre plot, and that the price paid by Nattin for its land was a fair one for multiple dwelling use, but very high for one-family site use, making that type of development economically unfeasible. A member of the Planning Board testified that that board opposed the March 9 rezoning. He stated that after hearing expert testimony on both sides he was convinced that there was as good a chance of water being on the Nattin land as there was any place else in the town. He found no valid reason for rezoning the Nattin land, adding that it was the Planning Board's view that the March 9 zoning amendment did not face up to the problems of inadequate water supply and inadequate sewage treatment which affected the entire town. Nattin's expert evidence that there was a supply of water on its property adequate to meet the needs of the number of units ultimately to be in its project was uncontradicted by the respondents. The issue here, though framed in terms of the legality of the amendment of

March 9, 1970 to the town's zoning ordinance and the applicability of Local Law No. 2 of 1967 regulating water supply and distribution systems to builders of housing, is really whether the delegation of zoning power to a town under sections 261 and 263 of the Town Law empowers the respondent Town Board, by amendment of the zoning ordinance, to ban multiple dwellings in a part of the town originally zoned to permit erection of such dwellings. The original zoning ordinance was adopted, after full hearings, in accordance with a comprehensive plan. Section 261 of the Town Law authorizes town boards, for the purpose of promoting the health, safety, morals or general welfare of the community, to regulate the height, number of stories and size of buildings and other structures, the percentage of lot that may be occupied, the size of yards, courts and other open spaces, the density of population, and the location and use of buildings, structures and land for trade, industry, residence and other purposes. There is no mention in this section of regulation of water supplies and sewage. Section 263 of the Town Law, which requires zoning regulations to be made in accordance with a comprehensive plan, provides that the regulations shall be designed, among other purposes, " to facilitate the adequate provision of transportation, water, sewerage," etc. Hence, the zoning ordinance adopted in 1963 pursuant to a comprehensive plan after extensive hearings presumably took into account the facilitation of an adequate provision of water and sewerage for those residing in the various areas set aside under the ordinance for the varying residential use established under the zoning ordinance. This is consistent with the standard set forth by our Court of Appeals in *Udell* v. *Haas* (21 N Y 2d 463, 469–470), when it said: " The thought behind the requirement [that zoning ordinances conform to a comprehensive plan] is that consideration must be given to the needs of the community as a whole. In exercising their zoning powers, the local authorities must act for the benefit of the community as a whole following a calm and deliberate consideration of the alternatives, and not because of the whims of either an articulate minority or even a majority of the community. * * * Moreover, the ' comprehensive plan' protects the landowner from arbitrary restrictions on the use of his property which can result from the pressures which outraged voters can bring to bear on public officials. ' With the heavy presumption of constitutional validity that attaches to legislation purportedly under the police power, and the difficulty in judicially applying a " reasonableness " standard, there is danger that zoning, considered as a self-contained activity rather than as a means to a broader end, may tyrannize individual property owners. Exercise of the legislative power to zone should be governed by rules and standards as clearly defined as possible, so that it cannot operate in an arbitrary and discriminatory fashion, and will actually be directed to the health, safety, welfare and morals of the community.' " Here the testimony established that the Planning Board opposed the amendment (which made it impossible for Nattin to use its land for building garden apartments) on the ground that the amendment failed to face up to the town's problems of inadequate water supply as well as sewage treatment problems which were no more serious in the area of Nattin's land than in other sections of the town. It was also established beyond dispute that Nattin would suffer serious economic detriment if it were compelled to use its land for single-family homes. Thus the respondents by their actions were singling out Nattin and imposing on it a heavy financial burden because of a condition general to the community. In *Westwood Forest Estates* v. *Village of Nyack* (23 N Y 2d 424), the Court of Appeals struck down a rezoning similar to the one before us, in which a village area zoned for multiple dwellings was changed to single-family dwellings allegedly to pre-

vent an increase in the amount of effluent discharged into the village's sewage system pending the construction of improved sewer facilities. In so ruling the court said (pp. 427–428): "The instant sanitation problem is, however, general to the community and not caused by the nature of plaintiff's land (see *De Sena* v. *Gulde*, 24 A D 2d 165, 171). It is, therefore, impermissible to single out this plaintiff to bear a heavy financial burden because of a general condition in the community * * * Such a destruction of value constitutes a taking of property in violation of the zoning power and [is] only permissible through the exercise of the power of eminent domain (*Arverne Bay Constr. Co.* v. *Thatcher*, 278 N. Y. 222, 232; *Dowsey* v. *Village of Kensington*, 257 N. Y. 221, 230–231)." The basic rule to be applied here, it seems to me, is set forth in *Matter of Fulling* v. *Palumbo* (21 N Y 2d 30), where the court said (p. 33): "The basic rule which has evolved from the cases is: where the property owner will suffer significant economic injury by the application of the area standard ordinance, that standard can be justified only by a showing that the public health, safety and welfare will be served by upholding the application of the standard and denying the variance." Though that decision dealt with the propriety of minimum-lot-size zoning, it involved a question not unlike that raised by the instant case, since the basic issue is whether an area zoned for multiple-dwelling garden apartments may be transformed into an area restricted to single-family detached homes. *Fulling* also stands for the proposition that when a property owner demonstrates, as was done here, that "the hardship caused is such as to deprive him of any use of the property to which it is reasonably adapted, and that, as a result, the ordinance amounts to a taking of his property" (p. 35), he is entitled to article 78 relief. It should also be noted that here, as in *Westwood* (*supra*), the town, in its answer, claims that it has initiated steps to bring municipal water and sewage treatment into the area and has directed preparation of plans and specifications for such purpose. The sole testimony in the record, however, on such town action is that nothing had been initiated along that line at the time of the hearing. Furthermore, the limitation imposed on Nattin's land by the March 9, 1970 amendment, unlike the plan approved in *Matter of Golden* v. *Planning Bd. of Town of Ramapo* (30 N Y 2d 359), is in no way limited as to time. (See, also, on this important *time* aspect, *Westwood Forest Estates* v. *Village of Nyack*, 23 N Y 2d 424, 428, *supra*.) In *Shepard* v. *Village of Skaneateles* (300 N. Y. 115, 118), Judge Fuld, for the court, while recognizing that "Zoning laws, enacted as they are to promote the health, safety and welfare of the community as a whole * * * necessarily entail hardships and difficulty for some individual owners" and that "No zoning plan can possibly provide for the general good and at the same time so accommodate the private interest that everyone is satisfied," said: "There must, however, be a proper balance between the welfare of the public and the rights of the private owner. The zoning regulation — to be reasonably related 'to the preservation of the scheme and purpose as a whole' — may neither deprive an individual owner 'of all beneficial use of his property' (*Matter of Eaton* v. *Sweeny*, 275 N. Y. 176, 182–183) nor impose upon him a 'special hardship unnecessarily and unreasonably.' (*Dowsey* v. *Village of Kensington*, 257 N. Y. 221, 226.)" I am persuaded that the town's amendment and the refusal of its Building Inspector and Zoning Administrator to issue a permit for the erection by Nattin of garden type apartments, based as they are on a condition which is not limited to Nattin's property but which is general to the community and which by limiting Nattin to the erection of one-family dwellings — economically unfeasible — is a virtual confiscation of Nattin's property. Under the circumstances, the

judgment appealed from should be reversed and a judgment issued directing the Building Inspector and Zoning Administrator to grant the permits sought by the petitioner, permitting the construction of the multi-family garden apartments set forth in its application for such permits, and declaring unconstitutional and void the amendment to the Zoning Ordinance of the Town of Wappinger adopted by the respondent Town Board on March 9. 1970. Rabin, P. J., Hopkins and Martuscello, JJ., concur in decision; Shapiro, J., dissents and votes to reverse, to direct the respondent Building Inspector and Zoning Administrator to grant the building permits and to declare the amendments in question of the Zoning Ordinance of the Town of Wappinger unconstitutional and void, with an opinion, in which Latham, J., concurs. Judgment affirmed, with costs. No opinion. [67 Misc 2d 828.]